UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.  8:01-cr-243-T-23MSS
             8:03-cv-2699-T-23MSS

MICHAEL DESHON BALL
_____/

# O R D E R

A jury convicted Ball of two counts of armed bank robbery and two firearms offenses. He was sentenced to a total of 193 months. The convictions and sentences were affirmed on direct appeal[1] (Doc. 77 in 01-cr-243). Ball's motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1 in 03-cv-2699) challenges the validity of his convictions and asserts seven claims of ineffective assistance of counsel. The United States does not challenge the timeliness of the motion to vacate.

## **FACTS**[2]

The Chemical & Industrial Federal Credit Union ("Chemical") in Mulberry, Florida, was robbed in May, 2001. The bank teller testified that the robber entered Chemical, approached her, and grabbed her hand, which caused her to look him in the eyes. The teller testified that the robber stated "give me all of your money." Immediately after the robber left, the teller called 911 and provided enough of a description for the police to prepare a composite sketch of the robber. She described the robber as a black male in

---

[1] The circuit court remanded in part for the correction of a clerical error.

[2] These facts are a summary of the facts in the circuit court's opinion (Doc. 77 in 01-cr-243) on direct appeal and the facts Ball states in his memorandum (Doc. 2 in 03-cv-2699) in support of the motion to vacate sentence.

his mid-to-late thirties, very large eyes, a round face, a mustache, and wearing a white baseball cap. She described the robber's gun as a small silver revolver with a black handle. The robber escaped with $10,784.

Three weeks later the Colonial Bank ("Colonial") in Lakeland, Florida, was robbed. A bank teller from Colonial testified a man entered the bank and pointed a revolver at her and ordered her to give him the money in her drawer. The teller gave the robber $2,271 plus a dye-pack with marked $20 bills. The bank manager watched the robber drive away, described the fleeing vehicle to other employees as a black Honda, and provided a license plate number, which another employee repeated to the police. Within fifteen minutes, a police officer saw a black Honda that otherwise matched the description of the get-away vehicle. The license place number provided by the Colonial bank manager was substantially similar to the license plate on the Honda (F2B2P as compared to FT282P). The officer followed the Honda into the parking lot for an auto parts store and observed the driver of the Honda enter the store. Ball was the driver of the Honda. The police summoned Ball outside, placed him under arrest, and returned him to Colonial where bank employees identified him as the robber. Inside Ball's Honda the police found a chrome-plated revolver and the $2,271 with a dye-pack of marked $20 bills taken during the Colonial robbery.

Also inside the Honda the police found stubs from money orders totaling $8,000. The teller positively identified the revolver found in Ball's Honda as the gun used during the Chemical robbery. Ball resembled the individual depicted in the composite sketch of the person who robbed Chemical, but the bank teller could not identify Ball in an array

of color booking photographs. Following this failure to identify Ball, the police officer selected Ball's photograph and told the teller that Ball was under arrest for robbing another bank. Despite this inability to identify Ball from the photographic array, the teller identified Ball during trial as the Chemical robber.

On direct appeal the circuit court found that "there is little doubt that the pretrial photographic display, in which Ball's photograph was singled-out and clearly identified by the police as a suspect in a different bank robbery, was impermissibly suggestive" (Doc. 77 at 10). The court determined that trial counsel's clear strategy was to discredit the teller's identification on cross-examination rather than object to the admissibility of the identification testimony. "[B]ecause of the other evidence linking Ball to the Chemical robbery, including the composite sketch, the positive identification of the firearm later found in his car, and the $8,000 in money order stubs also found in his car," the court determined that the error did not warrant reversal because "the admission of [the in-court identification] under the circumstances did not seriously affect the fairness, integrity and public reputation of the judicial proceedings."

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Ball asserts seven claims of ineffective assistance of counsel primarily focused on the Chemical robbery. Proving ineffective assistance of counsel is difficult. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). In order to demonstrate ineffective assistance of counsel, Ball must meet the

test established by Strickland v. Washington, 466 U.S. 668 (1984).  In Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998), the Eleventh Circuit discussed ineffective assistance of counsel:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052.
>
> Ball cannot meet the burden of Strickland by showing that, in hindsight, the

strategy chosen by counsel proved ineffective.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir.1992).  Accord Williams v. Head, 185 F.3d 1223, 1227 (11th Cir. 1999) ("One preliminary matter involves the lens through which we view ineffective assistance claims. . . .  More specifically, courts should 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'") (quoting Strickland v. Washington, 466 U.S. at 690), cert. denied, 530 U.S. 1246 (2000).

Alibi Witnesses:

Ball alleges that trial counsel was ineffective for failing to call alibi witnesses, specifically, his wife, mother, brothers, and cousin, each of whom would testify that Ball was at the shopping mall at the time of the Chemical robbery. Ball alleges that trial counsel advised each relative that he would call them as an alibi witness at trial.

Ball's claims fail because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. A defendant is not entitled to an error-free trial or to a trial in which every possible defense was presented.

> To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . . [T]he issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled. "

Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir.2000) (en banc ) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also, Mincey v. Head, 206 F.3d 1106, 1143 (11th Cir. 2000) ("We must respect the counsel's tactics if they seem 'reasonable considering all the circumstances.'" (quoting Strickland v. Washington)).

Trial counsel must decide which strategic and tactical options to pursue, such as choosing among the witnesses to call and the defenses to present. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The term "strategy" is broadly defined. "By 'strategy,' we mean no more than this concept:  trial counsel's course of conduct, that was neither

directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." Chandler v. United States, 218 F.3d at 1314 n.14. See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others."), and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir.1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

Ball contends that trial counsel should have presented the alibi witnesses as a challenge to the Chemical teller's questionable identification of Ball as the robber. Ball's trial counsel effectively cross-examined the teller, thoroughly developed the unreliability of her identification, and argued the lack of credibility during closing arguments. As a consequence, alibi witness testimony from individuals who had an interest in the outcome of the proceedings would not have materially added to trial counsel's attack on the reliability of the teller's identification. As noted above, on direct appeal the circuit court concluded that the evidence other than the teller's identification (the composite sketch, the positive identification of the firearm found in Ball's car as the gun used in the Chemical robbery, and the $8,000 in money order stubs also found in the car) was sufficient to overcome any error related to the Chemical teller's unreliable, in-court identification of Ball as the robber. The proposed alibi witness testimony would have had little if any impact on the value of the physical evidence that linked Ball to the Chemical robbery, a matter that trial counsel undoubtedly considered when he decided to forego presenting the alibi testimony from Ball's relatives.

Vehicle Search:

Ball alleges that trial counsel was ineffective for failing to move to suppress the evidence discovered during the search of Ball's car.  Just minutes after the Colonial robbery, a police officer followed Ball's car into a parking lot, and upon Ball's exit from the business, he was arrested.  Inside Ball's car the police found the cash (including the marked bills and the dye pack) from the Colonial robbery, a chrome plated revolver, and money order stubs totaling $8,000.  Ball argues that the police were required to obtain a search warrant because he was no longer in control of the vehicle when arrested.

Trial counsel is not ineffective for failing to raise frivolous arguments.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  The fruits of the search of Ball's car were clearly admissible.  See e.g., Carroll v. United States, 267 U.S. 132 (1925) (automobile exception to search warrant requirement), Texas v. White, 423 U.S. 67 (1975) (warrantless search of automobile is not unconstitutional, even if conducted at a later time and a different place from the arrest, if probable cause and exigent circumstances exist), South Dakota v. Opperman, 428 U.S. 364 (1976) (inventory search of automobile), and United States v. Ross, 456 U.S. 798 (1982) (warrantless search of automobile is not unconstitutional if police have probable cause to believe the vehicle contains evidence of a crime).

Bank Tellers' Identifications:

Ball alleges that trial counsel was ineffective for not moving to suppress the out-of-court identifications by both bank tellers.  The circuit court determined on direct appeal that trial counsel's strategy was to strenuously cross-examine the Chemical bank teller and challenge her credibility during closing arguments.  As the cases cited

- 7 -

above show, trial counsel's reasonable strategic and tactical decisions will not be "second guessed."

Ball faults trial counsel for not attempting to suppress the crime scene identification by the Colonial bank teller and contends that the identification procedure violated his right to counsel at the line-up.  Immediately after his arrest, a police officer drove Ball back to the Colonial bank where the teller positively identified Ball as the robber.  Ball relies on Gilbert v. California 388 U.S. 263 (1967), which held that a defendant has the right to counsel at a line-up.  However, the right to counsel recognized in Gilbert does not apply to an identification procedure that occurs prior to the initiation of judicial criminal proceedings.  Kirby v. Illinois, 406 U.S. 682 (1972).

Composite Sketch:

Ball alleges that trial counsel was ineffective for not moving to suppress the composite sketch that depicted the suspected Chemical bank robber.  Ball complains about the prejudicial nature of the composite sketch (the suspected robber depicted in the drawing resembled Ball) but he fails to present a sufficient basis for challenging its admissibility.[3]  Counsel is not ineffective for failing to assert frivolous arguments.

Threat to Withdraw:

Ball alleges that he was denied the effective assistance of counsel when trial counsel threatened to withdraw from the case if Ball testified.  Ball's allegation is not credible because this court ensured that Ball had voluntarily chosen not to testify.

> The Court:  Mr. Ball, I just make it a habit at this stage of a case when a defendant faces the decision about whether to testify to make a couple of points with him or her.  First of all, I want you to understand that you have

---

[3] Because the drawing was prepared shortly after the Chemical robbery, the drawing was not tainted by the teller's identification of Ball at which the police improperly advised her that Ball was under arrest for robbing another bank.

- 8 -

> a constitutional right which I will enforce to take the witness stand and testify and address the jury on the subject of the charges against you. That right is personal to you. It cannot be waived by the court. It cannot be waived by the United States of America. It cannot be waived by Mr. Edmund. It can only be waived by you.
>
> You also have an exactly similar right not to testify, of course. And if you make that election after an opportunity to view the trial and consider the matters that are pertinent, along with your counsel, then you of course will be — your choice will be honored, both in the letter and in the spirit in this courtroom, to not testify. And the jury will be reminded that they can make no adverse inference from that.
>
> But I did want to make sure that you understood that you have the right to testify, and that it is your decision, not mine or Mr. Edmund's, and that your decision is quite binding on us all. And that — I wanted to make sure that you — do you understand that?
>
> The Defendant: Yes, sir.
>
> The Court: Okay. And you have had, I take it, enough opportunity, because you had over the evening, to talk with Mr. Edmund. And the two of you in confidence, not to be shared with me or anyone else, but the two of you have made the decision that you will not testify; is that right?
>
> The Defendant: Yes, sir.

Transcript of Trial Proceedings, vol. 2 at 8 (Doc. 60). Ball's present allegations to the contrary are rejected.

Stipulation:

Ball alleges that trial counsel was ineffective for stipulating that Chemical was federally insured at the time of the robbery. The stipulation was as follows: "The Chemical & Industrial Federal Credit Union, located at 904 East Canal Street, Mulberry, Florida, is a federal credit union, the accounts of which are insured by the National Credit Union Administration Board." Transcript of Trial Proceedings, vol. 1 at 61 (Doc. 59). The record shows that proposed Exhibit 3, which was not introduced into evidence because of the stipulation, is identified as "documents showing federal

- 9 -

insurance from Chemical & Industrial Federal Credit Union" (Doc. 30).  Whether to stipulate to an uncontested fact is a matter of trial strategy left to trial counsel's discretion.  Ball does not present any evidence that Chemical was not federally insured at the time of the robbery.  Consequently, he cannot show that he was prejudiced by the stipulation.

Venire:

Ball asserts a variety of challenges to the jury selection process, all under the guise of ineffective assistance of counsel.  He alleges that trial counsel was ineffective for not challenging the racial composition of the jury venire because it failed to include an adequate percentage of African-Americans and Hispanics.  Ball's allegations fail to establish a prima facie violation of his Sixth Amendment right to a jury drawn from a fair cross-section of the community.  Duren v. Missouri, 439 U.S. 357, 364 (1979).  Similarly, Ball's allegation that the composition of the venire violated the Equal Protection Clause of the Fourteenth Amendment is inadequate.  The only basis Ball asserts to establish that the venire was improperly selected is that the jury selection process was changed at some point after his trial.

Ball alleges that counsel was ineffective for not challenging the United States' having exercised a peremptory challenge to strike one of the two African-Americans from the jury panel.[4]  Ball's challenge based on Batson v. Kentucky, 476 U.S. 79 (1986), fails because he has not shown that he was prejudiced by counsel's failure to object to the dismissal of one of the two African-American members of the venire.  Race was not an issue at Ball's trial, and the United States did not use its peremptory challenges to

---

[4] An African-American remained on the jury panel as an alternative.

remove all African-Americans from the jury panel.  Also, Ball has not presented any reason to believe that a racially balanced jury might have reached a different result. See e.g., Jackson v. Herring, 42 F.3d 1350, 1362 (11th Cir.) ("Nothing in the record indicates that a racially balanced jury would have been more likely to acquit or convict of a lesser charge than was the all-white jury in this case."), cert. dismissed sub nom Jackson v. Jones, 515 U.S. 1189 (1995).  The evidence establishing Ball's guilt is overwhelming:  possession in his car (a vehicle that matched the description and contained a license plate number similar to that reported by bank employees) of the exact dollar amount (including marked bills and a dye pack) stolen during the Colonial armed robbery, plus the positive identification by the Colonial teller of both Ball and the revolver recovered from inside his car; the Chemical teller's positive identification of the revolver recovered from inside Ball's car, Ball's resemblance of the robber depicted in the composite sketch, and the recovery from Ball's car of $8,000 worth of money order stubs (Ball has never offered an explanation for the money orders).

Accordingly, the motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Ball and close this action.

ORDERED in Tampa, Florida, on March 30, 2007.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE